Mary Flanagan et al., Appellees, v. Madison Square State Bank et al., Defendants. R. C. Wieboldt Co. et al., Appellants.

Gen. No. 39,503.

Opinion filed December 6, 1937.
Rehearing denied December 20, 1937.

Rosenthal, Hamill, Eldridge & King, of Chicago, for certain appellants; Willard L. King and George W. Gale, of Chicago, of counsel.

Shulman, Shulman & Abrams, of Chicago, for certain other appellants; Meyer Abrams, of counsel.

Aaron Soble, John C. DeWolfe and Robert E. Dowling, all of Chicago, for appellees; Max Chill, of Chicago, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

This is a bank stockholders' liability case brought by creditors in which, after reference to a master and hearing by the court it was decreed that defendants should pay the receiver of the Madison Square State Bank, in satisfaction of their respective constitutional superadded liabilities as stockholders of the bank, various amounts running from $500 assessed against Frederick C. Croft to $20,000 assessed against R. C. Wieboldt Company. Nine of the defendants have appealed.

June 14, 1932, the bank closed and a receiver was appointed by the auditor of public accounts. From 1923 to 1928 defendants, who appeal, owned stock in

the bank but all of this was sold prior to May, 1928, except four shares held by R. C. Wieboldt individually; during the period when the defendants were stockholders the bank had capital stock of $300,000. In September, 1930, after the sale of all of the defendants' stock, except the four shares referred to, the capital stock of the bank was reduced from $300,000 to $200,000; the certificate of reduction of the capital stock of the auditor of public accounts stated that the capital of the bank had not been diminished to the prejudice of creditors.

Defendants say that when they sold their stock they left a fund of $300,000 in excess of deposits available to meet the demands of creditors; that the new stockholders reduced that fund by $100,000, of which every creditor had notice, and defendants assert that there can be no liability against the old stockholders who sold their stock before the capital stock was reduced; that their position is analogous to that of a retired partner where the remaining partner assumes to pay the firm debts, and that under such circumstances as to creditors knowing of this agreement the retiring partner is a surety only, and if the creditors extend the time of payment to the partner continuing the business the retiring partner will be discharged from liability, citing *Wiley v. Temple,* 85 Ill. App. 69, and other cases.

Sec. 6, art. 11 of the State constitution provides that every stockholder in a banking corporation shall be liable to its creditors, over and above the amount of stock by him held, to an amount equal to his shares, for all its liabilities accruing while he remains a stockholder. This has been held to create a primary liability to the creditors. *Golden v. Cervenka,* 278 Ill. 409; *Sanders v. Merchants State Bank of Centralia,* 349 Ill. 547; *Heine v. Degen,* 362 Ill. 357. In *Fuller v. Ledden,* 87 Ill. 310, it was held that a bank stockholder's liability was fixed and he could not be released without

the consent of the creditors. "He had the right, it is true, to sell his stock and cease to be a member of the corporation, but his withdrawal from the corporation would not release him from liabilities incurred while a member. A contract or liability of this character can not be rescinded by one party without the consent of the other contracting party." *Sanders v. Merchants State Bank of Centralia,* 349 Ill. 547, and the opinion of our Supreme Court in *Comstock v. Morgan Park Trust & Sav. Bank,* 367 Ill. 276, are decisive against defendants' theory of liability as a surety.

Moreover, the Banking Act, ch. 16a, ¶ 12, Cahill's Ill. Rev. St. 1929, provides among other things for increasing or decreasing the capital stock, with a proviso, "that in no case shall the capital stock be diminished to the prejudice of the creditors of such corporation," and that "Such . . . increase or decrease . . . of capital stock . . . shall not affect suits pending in which such corporations or corporation shall be parties; nor shall such changes affect causes of action nor the rights of persons in any particular."

It is not necessary in this suit that creditors should prove their claims. These come properly in the liquidation suit where the claims may be presented to the receiver. This suit is for the purpose only of determining the constitutional liability of the stockholders. In *Heine v. Degen,* 362 Ill. 357, 373, a motion was made that all creditors be ruled to prove their claims in the proceeding. The court said this motion was properly denied; that, "It is not a prerequisite that all claims be proved by the creditors in order to determine the amounts owing by the individual stockholders who are primarily liable. This proof can be made otherwise."

In the same connection defendants also argue that the accountants who testified had mistakenly assumed that a depositor is a creditor regardless of the fact that he may be a borrower from the bank. In *Cohen v. North Ave. State Bank,* 291 Ill. App. 558, 568, this

same point was raised. We held that this contention could not be sustained; that the proper place for the allowance of offsets was in the liquidation suit, as the auditor making the examination of the bank records would not be in a position to pass upon the validity of offsets, citing cases.

Able counsel for defendants question at some length the accountants' evidence as being merely hearsay. This point was also made in the *Comstock* case, *supra,* and the court said: "Appellants contend that no sufficient foundation was laid before appellee's audit of the books of the bank was admitted in evidence. They rely on *LeRoy State Bank v. Keenan's Bank,* 337 Ill. 173, but in that case the plaintiff was a bank and it attempted to prove its claim against stockholders of the defendant bank by an audit of plaintiff's own books. In the case before us, the bank's books were admissible against its stockholders as admissions against interest. (*Loewenthal v. McCormick,* 101 Ill. 143; *Dows v. Naper,* 91 id. 44.) The fact is not questioned that these were the books of the bank. Nor is it questioned that they were voluminous. It was proper to admit the audit in evidence." This is applicable to the instant case.

There are no errors in the computation in the amount of liability against the defendants. Such a liability is several and a decree is entered against each of the defendants in an amount over and above the amount of stock held by him to an amount equal to his respective shares. *American Nat. Bank of Mt. Carmel v. Holsen,* 331 Ill. 622, 627. If any contemporaneous stockholders pay the receiver an amount equal to all the unpaid liabilities incurred during the contemporaneous ownership such liabilities are satisfied. No stockholder can be compelled to pay a sum greater than the aggregate of liabilities incurred by the bank while he was a stockholder. *Burket v. Reliance Bank & Trust Co.,* 366 Ill. 98, and cases there cited. Such

payments, if any, may be considered in the liquidation suit or in this suit, for the instant decree contains a provision reserving jurisdiction ''for considering and passing upon all questions which may arise with respect to the enforcement of this decree and the compromise and settlement of all liabilities.''

It is argued on behalf of R. C. Wieboldt Company that its acquisition of bank stock was ultra vires and that under the decision in *Golden v. Cervenka*, 278 Ill. 409, this fact constitutes a valid defense against an alleged liability on account of supposed ownership. When R. C. Wieboldt Company was incorporated its object was, ''to carry on and engage generally in the general contracting and construction business.'' The certificate of incorporation further provided that subject to the conditions prescribed by ''The General Corporation Act'' of 1919 it should have the right ''to own, purchase, or otherwise acquire, . . . the stocks, bonds, and other evidences of indebtedness of any corporation, domestic or foreign.''

Plaintiffs argue that when the decision in the *Cervenka* case was rendered the law did not permit a domestic corporation to hold stock in any other corporation but that since that time, by sec. 7 of the Act of 1919, domestic corporations are given the right to hold stock in other corporations; hence it is said the decision in the *Cervenka* case does not apply to the instant facts because the Wieboldt company acquired its stock subsequent to the enactment in 1919 of this provision. To this defendant Wieboldt company replies that other provisions of the corporation act indicate that the permission granted by sec. 7 of the Act of 1919 is to hold stock in another corporation but not bank stock.

Sec. 2 of the Corporation Act, Ill. Rev. Stats. 1919, provides that corporations may be organized as provided in the act for any lawful purpose, ''except for the purpose of banking. . . .'' Defendants' counsel say if a corporation organized under this act could

own part of the stock of a bank it could own all of it and thus effectually thwart this restriction; that sec. 13 of the Corporation Act of 1919 prohibited any corporation created under its provisions from exercising any banking powers, and that stockholders in a bank are engaged, through their directors, in banking. Sec. 8 of the Corporation Act of 1919 provided that stock of any building corporation may be taken as collateral security by "any corporation, bank or trust company." Thus, it is argued, the legislature distinguished between "any corporation" and a "bank." Sec. 6 of art. 11 of the constitution, which provides for stockholders' liability, designates such stockholders as *"individually* responsible" and describes them by personal pronouns. Defendant also argues that since Wieboldt company's sole object was the general contracting and construction business, there is no relation whatever between this business and owning stock in a bank.

The points made are plausible and carry some weight, but further consideration compels a disagreement. To construe the Corporation Act of 1919 as prohibiting the holding of bank stock by a domestic corporation would result in a number of inequities. It would be inequitable to free from liability a corporation which might hold the largest amount of bank stock, leaving the liability to fall on individuals, holders of small amounts. This would be unjust to small stockholders and also to creditors of the bank. It would prohibit a corporation from taking any bank stock as collateral to secure an obligation due the corporation. It would prohibit incorporated brokers from acquiring customers' bank stock as pledges to protect transactions on the market. It would invite the pretended holding of stock in a corporate name, under a corporate veil, which in fact was owned by individuals, thus thwarting the purpose of the constitutional liability provision. These and other consid-

erations lead us to the conclusion that the more reasonable construction of the General Corporation Act of 1919 permits the holding of bank stock by a domestic corporation. This being true, the decision in the *Cervenka* case, made prior to 1919, does not apply.

A brief has been filed on behalf of certain other co-defendants who are appealing. Most of the points made by them have been already noticed. It, is re-asserted that plaintiffs, not being creditors of the bank prior to 1928, have no right to maintain an action against stockholders who parted with their stock prior to that date. *Heine v. Degen,* 362 Ill. 357 (365–372) and *Comstock v. Morgan Park Tr. & Sav. Bank,* 363 Ill. 341, hold that any creditors of a bank may maintain a class suit for the benefit of all creditors against all stockholders irrespective of the time when they became creditors of the bank.

Payments already made by stockholders on their liabilities should be taken into account in determining the amount each defendant stockholder should pay, and, as was said in *Burket v. Reliance Bank & Trust Co.,* 366 Ill. 98, ''If a group of contemporaneous stockholders pay to the receiver in the creditor's suit a sum equal to all the liabilities incurred during the contemporaneous ownership, their liabilities are satisfied, and there is no warrant of law to compel that group to pay to the receiver, for the benefit of creditors, a sum greater than the aggregate of liabilities incurred by the bank while that group were the stockholders.'' Also *Cohen v. North Ave. State Bank, supra.*

The decree orders the costs of the reference to a master and other costs to be taxed against the defendants in the amount of $40 a defendant. This is manifestly inequitable, as taxing the same amount against the defendant with a small stockholder's liability as against one held liable in a large amount, and also regardless of whether he opposed the liability. Plaintiffs seek to justify this under the decision in

*Rosenfeld v. Horwich,* 221 Ill. App. 304, but that case was decided before the amendment of the Banking Act in 1929, ch. 16a, Cahill's Ill. Rev. St. 1929. The present act, ch. 16½, § 11, Ill. Rev. Stat. 1937; Jones Ill. Stats. Ann. 10.11, provides that the costs of proceedings to recover the liabilities of the stockholders, including plaintiffs' solicitors' fees and all expenses, may on order of court be paid out of the funds collected by the receiver and "the funds so collected after the payment of costs and expenses of collection, including solicitors' fees shall be distributed" among the creditors of the bank. In *Comstock v. Morgan Park Tr. & Sav. Bank,* 363 Ill. 341, the court indicated that the costs should be paid out of the fund collected as provided by the statute. The instant decree is erroneous in taxing the costs against the stockholders. The expenses should have been ordered paid out of the funds in the hands of the receiver.

In considering the points made upon this appeal we are mindful of what was said by the court in the *Comstock* case last cited in noting that many such cases have been before the courts of this State, "Thousands of creditors and stockholders have accepted our interpretations. Millions of dollars have been paid on the strength of them, and it would be destructive of the stability of the decisions of this court to further permit reiterations of the claim that the meaning of section 6 of article 11 of the constitution is in doubt or is undetermined."

For the reasons indicated the decree is affirmed except as to that part taxing the costs and expenses against the stockholders, which is reversed, and the cause will be remanded to correct the decree in this respect.

*Affirmed in part, reversed in part and remanded.*

O'CONNOR, P. J., and MATCHETT, J., concur.